UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Roger Smith,

Plaintiff,

v.

Civ. No. 01-1948 (JNE/RLE)
AMENDED ORDER

Northern Dewatering, Inc.,

Defendant and Third-Party Plaintiff,

v.

Rinker Materials Polypipe, Inc.,

Third-Party Defendant.

---

Francis E. Stephens, Esq., Hall Law Office, appeared for Plaintiff John Roger Smith.

Peter Van Bergen, Esq., Cousineau, McGuire & Anderson, appeared for Defendant and Third-Party Plaintiff, Northern Dewatering, Inc.

Max Ramsey, Esq., Rider Bennett, LLP, appeared for Third-Party Defendant Rinker Materials Polypipe, Inc.

---

John Roger Smith (Smith), a long-haul driver, brought this negligence action against Northern Dewatering, Inc. (NDI) for personal injuries he sustained during the unloading of pipes from his tractor-trailer. NDI brought a third-party claim for contribution against the manufacturer and shipper of the pipe, Rinker Materials Polypipe, Inc. (Rinker), alleging Rinker improperly loaded the pipes. The case is before the Court on Rinker's Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

On June 28, 2001, Smith picked up a load of pipes from Rinker's manufacturing plant in Sandersville, Georgia, for delivery to NDI's job site in St. Cloud, Minnesota. The load consisted of 25 pipes, each weighing roughly 600 pounds and measuring 50 feet long and 18 inches in

diameter. Rinker loaded the pipes onto Smith's flatbed trailer in five rows.[1] As the rows were loaded, Smith's nephew periodically secured the pipes with nylon straps stretched over the width of the flatbed trailer. While traveling to Minnesota, Smith stopped several times to ensure that the load remained properly secured.

Smith arrived in St. Cloud late in the evening of July 1, 2001. The next day, he met NDI employee Allen Haugen at an open field to unload the pipes. At Haugen's direction, Smith drove the tractor-trailer to the middle of the field for unloading. Numerous pieces of pipe were already in the field. To make room for Smith's load, Haugen used an end-loader to push the existing pipes away. While Haugen pushed the pipes, Smith removed the straps on his load of pipes. Smith first loosened the tension of the four top straps. He then proceeded down the passenger's side of the truck, the side where Haugen was working, and unhooked each strap. He then began to unhook the other side. As he was moving his way down the driver's side, he heard a "thump," looked up, and saw pipes rolling down on him. Smith sustained injuries from the falling pipes. He alleges that Haugen bumped the trailer with the end-loader causing the pipes to shift and roll off the trailer.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes

---

[1] The pipes were held together by steel bands in groups of two and three and then stacked five rows high. Each row had one group of two and one group of three, the order of which alternated on each row. Thus, if the first row was ordered by a group of two, and then three, the second row would have been ordered by a group of three, then two.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

NDI alleges that Rinker will be liable for contribution because, even if NDI is liable to Smith for his injuries, Rinker is also at fault for improperly loading the pipe. A claim for contribution requires, "first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn. 1994). "Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories." *Id.*

For purposes of this motion, the parties agreed at oral argument that Rinker's liability depends on whether Rinker can be held liable for improperly loading the pipes because it failed to use stakes.[2] According to Rinker, summary judgment is appropriate because Smith's acceptance of the load absolved Rinker of any liability.

Under Federal law, Smith is a 'motor carrier' and subject to the Federal Motor Carrier Safety Regulations (FMCSR). *See* 49 U.S.C. § 13102(12) (2002); 49 C.F.R. § 390.5 (2002). Shippers, such as Rinker, are not subject to the FMCSR. The FMCSR place the burden of load

[2] Stakes are essentially removable pieces of fencing that attach at the edges of a flatbed trailer to help retain the load. *See The American Heritage Dictionary of the English Language* (3d ed. 1996). The record does not reflect whether Smith's trailer was equipped for the use of stakes.

securement upon the carrier. *See* 49 C.F.R. §§ 390-393 (2002). These regulations require carriers to inspect whether cargo is properly distributed and adequately secured both before driving a truck and during transport. *See* 49 C.F.R. § 392.9(b); *Smart v. Am. Welding & Tank Co.*, 826 A.2d 570, 573-74 (N.H. 2003). Thus, under federal law, responsibility for improper loading generally rests with the carrier, even if the shipper loads the cargo. *See Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 868 (4th Cir. 1984). Smith secured the pipes in accordance with the FMCSR both at the outset and during his journey.[3] *See* 49 C.F.R. §§ 393.110, 392.9(b).

Notwithstanding Rinker's status as a shipper, NDI asserts Rinker is liable for improper loading under a common law duty of care. The prevailing law on a shipper's duty of care in loading cargo comes from *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953), which developed the following test:

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*Id.* at 445; *accord Symington v. Great Western Trucking, Co.*, 668 F. Supp. 1278, 1282 (S.D. Iowa 1987); *Decker v. New England Pub. Warehouse, Inc.*, 749 A.2d 762, 766 (Me 2000). The *Savage* rule "extends the [trucking] industry's reasonable understanding, as reflected in the

---

3 The FMCSR provide several methods by which a carrier may choose to secure cargo, some of which are commodity-specific. *See* 49 C.F.R. §§ 393.106, 393.110 (general requirements for securing cargo); 49 C.F.R. §§ 393.116-.136 (commodity-specific securement rules). Polyethylene pipe is not cargo subject to commodity-specific rules. *See* 49 C.F.R. §§ 393.116-.136. Here, Smith secured the load using straps spaced no greater than ten linear feet apart, in accordance with the FMCSR general cargo-securement methods. *See id.* at § 393.110.

federal regulations, to negligence suits involving carriers and shippers." *Smart*, 826 A.2d at 574 (internal quotations omitted).

Thus, under the *Savage* rule, in order for Rinker to be liable to Smith for his injuries, and to NDI for contribution, Rinker's failure to use stakes when loading Smith's trailer must be a defect that was not discernible from ordinary observation. Whether a defect is discernible from ordinary observation may depend on the experience of the carrier. *Alitalia v. Arrow Trucking Co.*, 977 F. Supp. 973, 984 (D. Ariz. 1997).

Rinker asserts that it is entitled to summary judgment because the failure to use stakes was readily discernable from Smith's ordinary observation. The record reflects that Smith was an experienced trucker who transported Rinker's pipes numerous times over many years. On the occasion at issue in this case, Smith oversaw his nephew strapping the load. Smith neither expressed concern about the load's securement, nor did he rely on any assurances from Rinker as to whether the load was secure. Given Smith's experience, the absence of stakes was readily discernible from his ordinary observation. *See Decker*, 749 A.2d at 768 (holding that carrier knew what the proper configuration of cargo should have been and his failure to adequately inspect loaded cargo did not impose liability on the shipper); *cf*. *Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 868-70 (4th Cir. 1984) (holding even though lack of strapping was readily apparent, defect not obvious when carrier, who had never transported that type of cargo, relied on shipper's assurances that cargo was secure); *Alitalia*, 977 F. Supp. at 985 (holding visual difference of a few inches between legal and non-legal height was not readily discernable to carrier with three-years experience). Thus, even if Rinker had improperly loaded the truck, the Court concludes that there was no latent defect for which it would be liable in contribution to NDI.

The case law and expert report relied upon by NDI do not compel a different conclusion. The first two cases, *Reed v. Ace Doran Hauling & Rigging Co.*, No. 95 C 4082, 1997 WL 177840 (N.D. Ill. Apr. 7, 1997), and *Holmes v. Goodyear Tire & Rubber Co.*, No. 96 C 345, 1997 WL 106104 (N.D. Ill. Feb. 12, 1997), do not address the *Savage* rule, and both employ straightforward applications of Illinois common law. The third case, *Muehlhauser v. Erickson*, 621 N.W.2d 24 (Minn. Ct. App. 2000), does not address a shipper's liability in any regard and instead discusses carrier liability exclusively. As such, the Court finds these cases inapplicable.

With regard to NDI's expert report, Al Smith's opinions are based entirely on a theory that Rinker used unsound wood to bind the pipes. Because the parties agreed at oral argument that Rinker's liability for contribution depends on staking, and not whether Rinker used unsound wood, Smith's report is inapposite.

Looking at the record in a light most favorable to NDI, a reasonable jury could not conclude that Rinker defectively loaded the pipes by failing to use stakes. Accordingly, the Court grants Rinker's motion for summary judgment.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Rinker's Motion for Summary Judgment [Docket No. 46] is GRANTED.

Dated: February 19, 2004

S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge